MACKENZIE & ALBRITTON LLP
JAMES A. HEARD, State Bar No. 114940
jheard@mallp.com
MARK L. MOSLEY, State Bar No. 136449
mmosleyesq@gmail.com
MELANIE SENGUPTA, State Bar No. 244615
m.sengupta@mallp.com
155 Sansome Street, Suite 800
San Francisco, CA 94104
Telephone: (415) 288-4000
Facsimile: (415) 288-4010

Attorneys for Plaintiff GTE MOBILNET OF CALIFORNIA Limited Partnership, a California limited partnership d/b/a VERIZON WIRELESS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

GTE MOBILNET OF CALIFORNIA LIMITED PARTNERSHIP, a California limited partnership d/b/a VERIZON WIRELESS,

Plaintiff,

vs.

CITY OF LOS ALTOS, a California municipal corporation,

Defendant.

Case No. 5:20-cv-00386-EJD

**SEPARATE STATEMENT OF PLAINTIFF VERIZON WIRELESS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Date: December 2, 2021
Time: 9:00 a.m.
Courtroom: 4
Judge: The Hon. Edward J. Davila

Pursuant to section V.B. of the Court's Standing Order for Civil Cases, plaintiff GTE Mobilnet of California Limited Partnership, d/b/a Verizon Wireless ("Verizon Wireless"), submits

the following reply separate statement of issues and material facts in support of its motion for partial summary judgment against defendant City of Los Altos ("City"):

| Claim | Verizon Wireless's Undisputed Facts/Supporting Evidence | City's Response/ Supporting Evidence | Verizon Wireless's Reply |
|---|---|---|---|
| **Claim No. 1:** The City's 500-foot school setback "regulates the placement . . . of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions" in violation of 47 U.S.C. § 332(c)(7)(B)(iv). | **Fact No. 1:** During the public hearings at which the City Council deliberated and adopted the school setback, and in the hearings on the Application,[1] participants urged the City to adopt the setback and deny the Application based on their fears of the supposedly harmful effects that radio frequency emissions from wireless facilities might have on children. Exhibits E (7/9 hearing transcript) at 49:6-14, 53:22 – 54:3; Exhibit F (7/30 hearing) at 80:7-10, 89:6-11, 108:3-13, 221:17-22, 244:1-21; Exhibit G (8/5 hearing) at 79:7-16, 95:2-12, 96:2-12; Exhibit W (10/25 transcript) at 15:7-11; Exhibit X (12/17 transcript) at 50:1 – 51:11; 51:25 – 54:3; 55:21 – 56:13; Exhibit U (written statement submitted by Cindy Russell); Exhibit V | **Disputed.** "Fact No. 1" is misleading. Residents expressed concerns on a variety of issues, including significant concerns over the aesthetic impact and blight that was expected from small deployments littering the residential areas of the City and around schools. Mehretu Decl., Exs. 110-115 [132-157]. "Fact No. 1" is also irrelevant as it is the City Council's determination that governs whether an ordinance will be adopted, and whether to uphold the denial of Verizon's Application, and those determinations are reflected in the provisions of the ordinance, Resolution No. 2019-35, Decl. Ex. 108 [118], and called forth in the Council's resolution denying Verizon's appeal. Resolution No. 2019-51, Mehretu Decl. Ex. 108 [121]. | **Reply:** The proffered exhibits (110-115) never mention the school setback and therefore they do not controvert this fact. The City points to only one exhibit (no. 114) that even *mentions* schools (but not the setback itself), and it does not propose a single aesthetic concern having anything to do with schools. It articulates only generic aesthetic complaints, which do not rise to the level of substantial evidence. *See* cases cited in footnote 2, on pages 6 and 7 of the reply brief.<br><br>The focus of this statement (Exhibit 114) is to oppose the placement of wireless facilities "where children . . . |

[1] Capitalized (defined) terms in this Separate Statement use the same meaning as in the opening Memorandum of Points and Authorities (ECF No. 51).

| | | | |
|---|---|---|---|
| | (written statement submitted by Melissa Smith). | | spend extended periods of time . . ." because "[e]xposure to cell towers are [sic] linked to higher rates of cancer." This exhibit does not controvert Fact No. 1. |
| | **<u>Fact No. 2</u>:** The projected radio frequency emissions at ground level from the Proposed Facility will be less than 2% of the limits set by the FCC. Exhibit D, at the 35th and 36th unnumbered pages (pages 1 and 2 of Radio Frequency Public Safety Report); Exhibit Q (updated report finding even lower levels); Exhibit X (12/17/2019 hearing transcript) at 14:24 – 17:21 (testimony of Dr. Jerrold Bushberg explaining meaning and significance radio frequency data). No contrary evidence was presented. | **<u>Disputed.</u>** As to "Fact No. 2" the City has not had any opportunity to conduct expert discovery into Verizon's claims about its RF emissions levels, and on that basis disputes this fact. Dkt. 39; Decl. ¶ 78. However, this fact is also irrelevant to the issue of Verizon's claim because the City did not deny Verizon's Application based on its level of Radio frequency emissions. Rather, the City denied Verizon's Application because it did not comply with the City's siting restrictions because it was located within 500 feet of a school in a Public and Community Facilities District. Mehretu Decl. Ex. 162 [588]; Verizon's Application, Dkt. 51-2, pp. 54-94. | **<u>Reply</u>:** Expert discovery has nothing to do with this issue. The question here is whether there is any substantial evidence in the administrative record that radio frequency emissions from the proposed facility might exceed the FCC's published limits. The cited report estimates that radio frequency emissions from the facility will come nowhere near those limits. The City had ample opportunity at the administrative hearing level to introduce contrary evidence and could not do so. This fact is uncontroverted. |
| | **<u>Fact No. 3</u>:** No evidence was received by the City Council that would have justified the school setback on aesthetic | **<u>Disputed.</u>** As to "Fact No. 3," concerns over the aesthetic impact of small cells littering residential areas of the City and around schools were | **<u>Reply</u>:** Here again, the cited exhibits (110-115) do not controvert this fact. The only articulated aesthetic objections |

| | | | |
|---|---|---|---|
| | grounds or any other reason besides concern about the alleged health impacts of radio frequency emissions. | widely held and forcefully expressed to the City in support of its comprehensive wireless ordinance, Mehretu Decl. Exs. 110-115 [132-157], which ordinance prohibits the siting of a small cell facility within 500 feet of a school in a Public and Community Facilities District. Resolution No. 2019-35, Mehretu Decl. Ex. 108 [120-121]. The basis for the City's denial of Verizon's Application was that it did not comply with the siting restrictions of the City's comprehensive wireless ordinance because Verizon's proposed small cell would be located within 500 feet of a school in a Public and Community Facilities District. Application, Dkt. 51-2, pp. 54-94; Resolution No. 2019-51, Mehretu Decl. Ex. 162 [587-592] at [588].<br><br>However, comments by residents are legally irrelevant to whether the City's ordinance regulates based on radio frequency concerns. Noting in the city's comprehensive wireless ordinance purports to regulate facilities based on radio frequency where the facility complies with FCC regulations on such radio frequency emissions. Urgency | were not related to schools, but to residential areas. Further, these were not specific objections, but merely general complaints, which do not constitute substantial evidence. The City's legal arguments are answered in the accompanying brief. This fact is uncontroverted. |

| | | | |
|---|---|---|---|
| | | Ordinance, Mehretu Decl. Ex. 107 [89]. Under bedrock separation of powers principles, a court is not permitted to speculate as to the motivation behind legislation, as Verizon has improperly invited the Court to do here. Golden State Transit Corp. v. City of Los Angeles, 686 F.2d 758, 759 (9th Cir. 1982); Wal-Mart Stores, Inc. v. City of Turlock, 483 F. Supp. 2d 987, 1009 (E.D. Cal. 2006); United States v. Constantine, 296 U.S. 287, 298–99 (1935).<br><br>Comments by residents are legally irrelevant to whether the City's ordinance regulates based on radio frequency concerns for another independent reason. At the substantial evidence phase, a court must "take applicable state and local regulations as we find them and evaluate the City decision's evidentiary support (or lack thereof) relative to those regulations." MetroPCS Inc. v. City & Cty of San Francisco, 400 F.3d 715,724 (9th Cir. 2005). | |
| **Claim No. 2:** Under the holding of *AT&T Wireless Services of California LLC v. City of* | **Fact No. 1:** Facts 1 through 3 for Claim No. 1 are equally applicable to Claim No. 2 and are incorporated here by this reference. | **Disputed.** The City's denial of Verizon's Application was based on its failure to comply with the siting restrictions contained in the City's comprehensive wireless | **Reply:** The City is missing the point. The issue here is *not* whether the proposed facility would be within 500 feet of a school. The |

| | | | |
|---|---|---|---|
| *Carlsbad*, 308 F.Supp.2d 1148, 1159 (S.D. Cal. 2003), the City's denial of Verizon Wireless's Application was not "supported by substantial evidence contained in a written record" as required by 47 U.S.C. § 332(c)(7)(B)(iii) because the denial was impermissibly based on public fears of radio frequency emissions. | | ordinance. Resolution No. 2019-35, Mehretu Decl. Ex. 108 [120-121]; Verizon's Application, Dkt. 51-2, pp. 54-94; Resolution No. 2019-51, Mehretu Decl. Ex. 162 [587-592].<br><br>Opposing facts to "Facts 1 through 3 for Claim No. 1" are equally applicable to disputing "Claim No. 2" and are incorporated here by this reference to the extent the Court allows Verizon's to incorporate facts from another section of this statement as it has attempted here. | issue is whether the City adopted its school setback to achieve any specific aesthetic criterion, or whether it did so to protect children from the supposedly harmful effects of radio frequency emissions. The evidence is uncontroverted that it was the latter. Under the authorities cited, the City's denial of the application is therefore unsupported by substantial evidence in the administrative record and must be vacated. |
| **<u>Claim No. 3</u>:** In the alternative, the City's finding that Verizon Wireless failed to qualify for an exception under section 11.12.090 of the Ordinance because Verizon Wireless had not shown that denial of the Application violated either federal or state law is not supported by substantial | **<u>Fact No. 1</u>:** As stated in its denial resolution (Exhibit Y), the City refused to apply the "material inhibition of service" test, set out in the "*Small Cell Order,*" which was affirmed in *City of Portland v. United States*, 969 F.3d 1020 (9th Cir. 2020). Thus, the City *applied the wrong test*. Findings made under the wrong test are irrelevant and do not constitute substantial evidence to support the City's denial of the Application. | **Disputed.** "Fact No. 1" is misleading and wrong for several reasons:<br><br>The City did not employ the "wrong test" in its examination of the propriety of the exception under Section 11.12.090. Rather, the City Council properly analyzed whether Verizon had carried its burden to establish that an exception should apply by considering, among other things, whether Verizon had established a "significant gap" and whether, even if it had, its proposed facility was the least intrusive means, both of which remain the | **<u>Reply</u>:** As explained in the accompanying reply brief, the City's new wireless ordinance required Verizon Wireless to make an evidentiary showing at the administrative level that the City's denial of its application would violate either state or federal law. Verizon Wireless presented its evidence at that level. Thus, the City's denial of an exception under its Ordinance was an evidentiary finding |

| | | | |
|---|---|---|---|
| evidence in the written record, in violation of 47 U.S.C. § 332(c)(7)(B)(iii). | | appropriate test here. City of Portland v. United States, 969 F.3d 1020, 1031- 1032, 1034 (9th Cir. 2020) ("Portland"), cert. denied sub nom. Portland, OR v. FCC, No. 20-1354, 2021 WL 2637868 (June 28, 2021); Sprint Telephony PCS, L.P. v. Cty. of San Diego, 543 F.3d 571, 580 (9th Cir. 2008) ("Sprint"). The City Council next concluded that Verizon failed to carry its burden and establish that its proposed facility was the "least intrusive means." Mehretu Decl. Ex. 161 [499-500]. This conclusion was correct given that Verizon failed to establish that its proposed facility was the "least intrusive means" of achieving its legitimate wireless objectives in the City as a matter of law because Verizon's proposed facility, as well as all of its proposed alternatives, violated the Wireless Ordinance's siting restrictions. T-Mobile USA, Inc. v. City of Anacortes, 572 F.3d 987, 996, n. 10 (9th Cir. 2009) ("Anacortes").<br><br>More fundamentally, the City did not have the burden to establish why it was not granting an exception, nor did the City's refusal to grant a discretionary exception | that must be supported by substantial evidence in the administrative record. If it is not, the City failed to comply with its own Ordinance.<br><br>In this case, there can be no substantial evidence to support the City's denial of an exception under federal law because the City was applying the wrong test. Thus, this fact is uncontroverted.<br><br>Further, Verizon Wireless submitted evidence from the administrative record (Exhibit O, its Design Engineer's Statement) explaining why a denial of the application here would "materially inhibit" its ability to provide service and, therefore, violate Section 332. Thus, the evidence in the administrative record is uncontroverted that, if the City had used the correct test, Verizon Wireless would have qualified for an exception under the |

| | | | |
|---|---|---|---|
| | | need to be based on "substantial evidence." MetroPCS at 723–24 (it is well established that the substantial evidence inquiry does not incorporate the substantive federal standards imposed by the Act, but instead requires a determination whether the denial of a facility is supported by substantial evidence in the context of some applicable local criterion); Newpath, No. SACV 06-550-JVS ANX, 2009 WL 9050819, at *19 n.17 (C.D. Cal. Dec. 23, 2009); Urgency Ordinance, Mehretu Decl. Ex. 107 [102]. | ordinance. |
| | **<u>Fact No. 2</u>:** The City's finding (applying the wrong test) that the "the evidence in the record did not show any significant gap" in coverage is controverted by the undisputed evidence in the written record. *See* Exhibit O (Design Engineer's report); Exhibit X (12/17/2019 hearing transcript) at 22-33 (Design Engineer's testimony).<br><br>**<u>Fact No. 3</u>:** The City's second finding (applying the wrong test) that "[a]lternatives such as improvements to other | As to "Fact No. 2" and "Fact No. 3," the City has not had a full and fair opportunity to conduct expert discovery into Verizon's claims about whether it has a "significant gap" or whether its proposed facility was the least intrusive means. Dkt. 39; Mehretu Decl. ¶ 78. As to this, the City has retained a highly experienced radio frequency engineer who will address why Verizon could achieve its legitimate wireless service goals in the City through technically feasible wireless facilities that – unlike Verizon's proposed | **<u>Reply</u>:** This has nothing to do with expert discovery in subsequent federal court litigation. The issue here is whether there is or is not sufficient evidence in the administrative record to controvert the evidence that had been submitted by Verizon Wireless at *that* level. The City is conceding here that there is none. Thus, these two facts (nos. 2 and 3) are uncontroverted. |

| | | | |
|---|---|---|---|
| | towers, equipment changes, and other network changes were briefly discussed and the evidence from Verizon [Wireless's] RF expert was that these types of network changes could cause some improvement to service" (Exhibit Y), was also unsupported by substantial evidence and contradicted by the uncontroverted evidence. *See* Exhibit P (Verizon Wireless's Alternatives Analysis) and its Design Engineer's testimony (existing facilities are "maxed out [and] can't provide any additional service"); Exhibit X (12/17/2019 hearing transcript) at 22-33. | facility or any of those it presented as explored alternatives – comply with the City's siting regulations. Mehretu Decl. ¶ 79; Mehretu Decl. Ex. 161 [499-500] (Councilmember Enander explained that Verizon failed to establish its proposed facility was the least intrusive means because "I'm further not persuaded that we have a comprehensive application in front of us that truly provides for a comparison of alternatives. What we are given is an alternative among small cell[s], not an alternative among different technologies and improvements in the use and utilization of spectrum, expansion of other resources and so on."). | |
| | **<u>Fact No. 4</u>:** The City's finding that its denial of the Application did not violate State law is not based on substantial evidence because California Public Utilities Code section 7901 requires any denial to be based on "site-specific aesthetic criteria," *Sprint PCS Assets, L.L.C. v. City of Palos Verdes Estates*, 583 F.3d 716, 723-24 (9th Cir. 2009). Here, the City specifically asked Verizon Wireless to use | As to "Fact No. 4" Prior to the City's adoption of its comprehensive wireless ordinance, City staff suggested that Verizon consider moving its proposed cite [sic] to one of its proposed alternatives further away from the original selected residential location specifically because residents who were concerned about the aesthetic impact the facility would have on their neighborhood. Mehretu Decl. Ex. 110 | **<u>Reply</u>:** The City misunderstands the significance of exhibit 110. As explained in Verizon Wireless's opening brief, Verizon Wireless originally proposed a site on Valencia Drive, further away from the high school. The City asked Verizon Wireless to relocate the proposed facility to 155 Almond Ave. (i.e., closer to the |

| | | | |
|---|---|---|---|
| | the 155 Almond Avenue site (closer to the school). Then, no one ever raised any specific "size and placement" objection to that site. Therefore, no site-specific aesthetic criteria were ever identified, let alone applied. This finding is unsupported by substantial evidence in the written record. | [133]. Also, nothing in Sprint PCS Assets, L.L.C. v. City of Palos Verdes Estates, 583 F.3d 716, 723-24 (9th Cir. 2009) suggests that the City's refusal to grant Verizon a discretionary exception was improper. | school) *for aesthetic reasons*, and Verizon Wireless agreed to do so. Exhibit 110 is part of the correspondence that led to that agreement. It therefore directly contradicts the position, advanced by the City here, that it adopted its school setback to achieve aesthetic objectives.<br><br>Nothing about the exception procedure in the City's ordinance is discretionary. It requires an evidentiary hearing followed by a finding by the City Council. To the extent that that finding was not supported by substantial evidence, the City violated its own Ordinance.<br><br>Here, the City is effectively conceding that this is what happened. The inevitable result of this concession is that this fact (no. 4) is uncontroverted. |

Dated: August 17, 2021

MACKENZIE & ALBRITTON LLP

/s/ Mark L. Mosley

Mark L. Mosley
Attorneys for Plaintiff GTE Mobilnet of California Limited Partnership, d/b/a Verizon Wireless